Petroplus, Judge:
The Nello L. Teer Company, claimant, on June 28,1965, entered into a written Contract with the State Road Commission to *217 build and complete according to Plans and Specifications of the Commission a road in the Counties of Raleigh and Wyoming, in West Virginia, known as the 3 Forks to Bolt Road, Project No. 3848 C-l, and for unit prices based on estimated quantities set forth in a Proposal claimant agreed at its expense to furnish all the necessary materials, labor, tools and appliances to build the road in a good workmanlike and substantial manner. The estimated cost under the Contract was $1,736,891.20. Final payment by the State was in the amount of $2,025,803.48, due primarily to a substantial overrun in an item designated as “Unclassified Excavation” in the Contract. Unclassified excavation is defined in the Specifications as building a roadway and forming the embankments as required by the Plans, or as directed by the Engineer to conform to the Plans.
The Contract required the Contractor to sow seed, apply fertilizer, agricultural limestone and mulch material to areas shown on the Plans. The difference in the designed slopes and the actual slopes constructed gives rise to this claim for seeding and mulching in areas extending beyond the right-of-way of the road construction project.
The Standard Specifications, Roads and Bridges of the State Road Commission, adopted in 1960, were incorporated by reference in the contractual documents, supplemented by certain Special Specifications, and pertinent references thereto were attached as Exhibits to the claimant’s Petition. The amount claimed is $19,975.50, for additional seeding and mulching performed by the claimant, which includes the additional limestone and fertilizer which is required for the excess seeding and mulching. The facts of this case have been substantially stipulated, and the quantities of material furnished and work performed are not in dispute. Neither is there any dispute that the work was properly performed in a workmanlike manner acceptable to the State Road Commission.
Due primarily to changes in the grade of the road, there was a substantial overrun of unclassified excavation in the amount of 324,000 cubic yards, with a resulting increase in the size and number of waste areas on the project for disposal of the excess waste material. The excess waste material was to be disposed of by and at the expense of the Contractor. The Standard Specifications provided:
*218 “Waste: All surplus material shall be used in the uniform widening of embankments or shoulders as directed by the Engineer. * * * Whenever in the opinion of the Engineer, surplus material is not required for such widening, it shall be wasted in spoil banks or waste sites provided by the Contractor. * * * No material may be wasted at places other than those approved.”
(Section 2. 2. 3 D (3) Waste)
The Special Specifications in the Contract provided:
“Location of waste areas and borrow pits must be approved by the Design Division.”
“No waste areas shall be located above roadway.” “Borrow pits and waste sites as required (Including clearing and grubbing of same) to be furnished by the contractor at his expense, cost to be included in the unit price bid for Item 2, unclassified excavation.”
“Borrow pits and waste sites adjacent to new highway construction will be graded to conditions satisfactory to the engineer and seeded and mulched the same as roadway construction.”
The only issue before the Court is to properly interpret the Contract and to ascertain the intention of the contracting parties with relation to the extra items claimed to be com-pensable. The Contractor has not been paid for all the seeding and mulching for which it would have been paid as normal seeding area on the designed slopes. Is the State Road Commission, under the terms of this Contract, required to pay Nello L. Teer Company, the Contractor, for all the seeding and mulching that the Contractor performed (Including the applications of limestone and fertilizer), or only for such seeding and mulching for which it would have been paid, had certain waste areas or spoil banks not been adjacent to the highway, thereby creating enlarged and extended slopes to be seeded and mulched.
The work was performed under the supervision of the Engineer of the State Road Commission, who decides all questions which may arise as to the quality and acceptability of the work and materials. He also is empowered to decide all questions which may arise as to the interpretations of the Plans and Specifications, and all questions as to the fulfillment of the *219 terms of the contract on the part of the Contractor. Any deviations from the approved Plans, profiles and cross-sections on file in the State Road Commission office, which arise by the exigencies of the construction, must be authorized by him in writing. All of these matters appear in the Specifications of the Contract.
The Contractor by choice and on his own volition secured Lease Agreements from property owners covering certain waste areas which were adjacent to the right-of-way, and on September 23, 1965, submitted his choice of locations to the Commission for approval. Such approval was given in writing by the Commission on November 17, 1965, subject to certain restrictions dealing with drainage and protection of the roadway embankments from erosion should the waste areas subside. It appears from the stipulation and the evidence that by choice of the Contractor the excess waste material was placed on the normal designed embankments and slopes called for in the Plans, thereby extending the embankments and slopes into areas appreciably beyond the road construction right-of-way. The claimant as a consequence created a situation requiring additional seeding and mulching beyond that originally contemplated by the terms of the Contract for the normal embankments and slopes of the road. The enlargement and extension of the slopes into areas of privately owned property required almost double the amount of seeding and mulching which would have been required had the waste areas not been adjacent to the highway. The Contractor now seeks payment on a unit price basis for the additional seeding and mulching, as well as additional agricultural limestone and fertilizer required, contending that under the Special Specification it was required to seed and mulch waste sites adjacent to the new highway construction in the same manner as roadway construction. We assume that had the excess material been disposed of elsewhere in spoil banks or waste sites away from the road construction that the additional seeding and mulching would not have been required by the terms of the Contract.
From October, 1966, to August, 1967, the additional seeding and mulching was performed without compensation and without complaint by the Contractor or his Subcontractor, and it was only when about four more acres remained to be seeded *220 that the question was raised that additional seeding and mulching had not been paid for as the wqrk progressed on monthly estimates. On the final estimate dated April 3, 1968, the quantities allowed for limestone, fertilizer, seeding and mulching were based on normal seeding areas.
The Contractor contends that a proper interpretation of the contract requires that the excess seeding and mulching required by the contract to be performed be compensable. The State’s position is that inasmuch as the Contractor was required to furnish waste sites at its expense, additional seeding and mulching required by unnecessarily using the surplus waste material for widening the embankments or shoulders of the road should not be a compensable item, especially since such seeding and mulching is in areas outside of the right-of-way. The actual slopes were almost doubled in area from the originally designed slopes by and for the benefit of the Contractor.
It is the opinion of this Court that the intention of the parties as expressed in the original contract was to make compensation for the seeding and mulching required for the designed embankments and slopes of the new road as shown by the Plans, profiles and cross-sections. At that time the location of the waste sites had not been determined, and when the Contractor later decided to select waste sites for reasons of his own ad-. jacent to the highway, he subjected himself to the special provision that waste sites adjacent to the new highway had to be graded and seeded and mulched in the same manner as the originally designed roadway construction. The surplus material clearly was not reasonably required for road-widening purposes, and it was to be placed in waste sites provided by the Contractor at its expense, the cost of which was to be included in the unit price bid for cubic yards moved under unclassified excavation. The Contractor has been paid for the seeding and mulching that it would have performed on the normal embankments and slopes required to support the new road. The State Road Commission did not require the Contractor to waste in the areas in which he wasted excess material, but merely approved this method of handling the surplus material.
Even if we assume in this case that by giving its approval, the State Road Commission directed or ordered the Contractor *221 to dispose of the waste material on planned embankments and shoulders, thereby increasing the area to be seeded, this would constitute extra work ordered by the Commission and under the regulations required a Supplemental Agreement signed by both parties fixing a fair and equitable compensation for the extra work. Such an Agreement was not requested by either party to the Contract. We also call attention to the provision in the Standard Specification, 1.5.11, which requires a Contractor who deems extra compensation is due him for work or materials not clearly covered in the Contract, to notify the Engineer in writing of his intention to make claim for extra compensation before he begins the work on which he intends to base his claim. If such notification is not given, and it was not given in this case, then the Contractor agrees to waive any claim for such extra compensation.
The Contract in this case is not free from ambiguity as to who shall pay for the seeding and mulching of waste sites adjacent to the new highway construction. We feel that a reasonable and just construction, taking into consideration the object and purpose of the Contract, the designed embankments and slopes, the situation of the parties, the Plans and Specifications incorporated therein by reference, and the designation of slope lines for the embankments on the detailed Plans, constrain this Court to conclude that it was not the intention of the parties that the State Road Commission should pay for seeding and mulching enlarged and extended areas of slope beyond the right-of-way, which extended slopes resulted from disposal of excess waste materials in pits adjacent to the highway, and this notwithstanding that the specifications required these areas to be seeded and mulched. Since the furnishing of the waste sites was made the responsibility of the contractor, it would be reasonable to assume that any treatment required for these waste sites such as compaction, drainage, seeding or mulching should also be his responsibility and at his expense. We conclude that it was not the intention of the contracting parties to make the waste sites cost items of the contract, and unless the contract clearly provided that the waste sites were part of the road construction project we must assume that all costs connected therewith were to be borne by the Contractor. If the terms of the agreement were doubtful and uncertain on this point, the Court must give consideration to the fact that *222 the specifications outlined the procedures that the Contractor should follow to secure compensation for controvertible claims or so-called extra work, as well as to the conduct of the parties in not claiming or allowing additional seeding and mulching in the monthly estimates and work progress payments. True the latter conduct would not constitute an estoppel, but it would be some evidence of how the parties construed the contract. The claimant is chargeable with knowledge that it was dealing with a governmental agency, with employees and agents whose duties are defined by law and with limited powers to contract for cost items not clearly made a part of the contract. If such a contract did provide compensation for items outside of the limits of the roadside construction, we would also be confronted with the necessity of considering the ultra vires nature of such provisions.
After considering all of the facts stipulated, the evidence and all reasonable inferences derived therefrom, the Court is of the opinion that the claimant has not established that the State in equity and good conscience should discharge and pay the alleged claim, and, therefore, we are of the opinion, to and do not make any award to the claimant herein.
Claim disallowed.